Andrew J. Guzzo (HI-SBN 010586)
Kelly Guzzo, PLC
7 Waterfront Plaza
500 Ala Moana Blvd., Suite 400
Honolulu, HI 96813
Telephone: 703-424-7576
Email: aguzzo@kellyguzzo.com
*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| RIORDAN PRINGLE, individually, and on behalf of others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED AIRLINES, INC., a Delaware corporation,<br><br>*Defendant*. | **Case No: 1:21-112**<br><br>**CLASS ACTION COMPLAINT** |

**CLASS ACTION COMPLAINT FOR STATUTORY DAMAGES UNDER THE TELEPHONE CONSUMER PROTECTION ACT**

1.  This action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (hereinafter the "TCPA"), a remedial statute enacted in response to consumer outrage over the proliferation of intrusive automated telephone calls. *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1043-1044

(9th Cir. 2018). "Computerized calls are the scourge of modern civilization." 137 Cong. Rec. S16,205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings).

2. At various times within the four (4) year period prior to the filing of this complaint Defendant, United Airlines, Inc. (hereinafter "United"), sent or caused to be sent, unsolicited text messages to Plaintiff, Riordan Pringle's (hereinafter "Plaintiff"), cellular telephone using an automatic telephone dialing system (hereinafter "ATDS") in violation of the TCPA, despite Plaintiff's multiple requests that the text messages cease.

3. United actively chooses to utilizes automatic text message communications with its customers as part of its business model, yet despite this, United failed to take action to curb their violative practice of sending automated text messages to consumers who opt-out of receiving said text message communications.

4. Upon information and good belief, United knew it was flagrantly violating the TCPA. However, United failed to take effective action to stop the violations, and chose to save on the costs of solving the problem at the expense of the privacy and frustration of its customers.

5. Accordingly, Plaintiff, alleges as follows upon personal knowledge as to himself, his own acts and experiences, and, as to all other matters, upon information and good belief, including investigation conducted by his attorneys.

On behalf of themselves and the members of the classes, Plaintiff seeks injunctive relief and an award of statutory damages to the class members.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 47 U.S.C. § 227(b)(3) and 28 U.S.C. § 1331.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)-(c) and 1441(a), because United is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, United provides its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction, and Plaintiff has resided in this District at all relevant times.

## PARTIES

8. At all times relevant, Plaintiff is and was a natural person and a resident of Honolulu County, Hawaii.

9. At all times relevant, United is and was a multinational corporation that provides airline transportation services to consumers.

10. At all times relevant, United is and was a Delaware corporation whose principal address is 233 S. Wacker Drive, WHQCT-14th Floor, Chicago, IL 60606 and whose registered agent for service of process in the State of Hawaii is the Corporation Company, Inc., 1136 Union Mall, Ste. 301, Honolulu, HI 96813.

11. At all times relevant, United directed, marketed, communicated, and provided its business activities throughout the United States, including the State of Hawaii.

## INDIVIDUAL AND AGENCY LIABILITY

12. Whenever in this complaint it is alleged that United committed any act or omission, it is meant that United's affiliates, subsidiaries, related entities, officers, directors, vice-principals, agents, sub-agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification, and/or approval of United or was done in the routine normal course and scope of employment of the United's affiliates, subsidiaries, related entities, officers, directors, vice-principals, agents, sub-agents, servants, or employees.

13. At all times relevant, Plaintiff alleges that United is individually responsible for the actions and occurrences alleged herein, that United is the cause of the harm alleged herein, and that United is individually liable for the violations alleged herein.

14. To the extent that United is not individually responsible for the violations alleged herein, Plaintiff alleges that, at all times material hereto, United acted in concert with third-parties, acted in an agency capacity with third-parties and

intended to and did participate in the events, acts, practices, and courses of conduct alleged herein, and United was the proximate cause of the violations alleged herein.

## OVERVIEW OF THE TCPA

15. The TCPA was enacted more than twenty (20) years ago to regulate the explosive growth of automated telephone calls, which Congress recognized as a nuisance and an intrusive invasion of privacy.

16. The TCPA states in relevant part: "It shall be unlawful . . . to make any call (other than a call for emergency purposes or made with prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii).

17. A text message is considered a "call" under the TCPA. *See Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 952 (9th Cir. 2009) ("[W]e hold that a text message is a 'call' within the meaning of the TCPA.").

18. "The statutory definition of an automatic telephone dialing system under the Telephone Consumer Protection Act, 47 U.S.C.S. § 227, includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator." *Marks*, 904 F.3d at 1043.

19. According to the plain language of the statute, telephone calls and text messages that are otherwise in violation of the TCPA are not unlawful if made either:

(1) "for emergency purposes" or (2) "with prior express consent of the called party." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

20. Federal Communications Commission (hereinafter the "FCC") regulations define "emergency purposes" as "calls made *necessary* in any situation affecting the health and safety of consumers." 47 C.F.R. 64.1200(f)(4) (emphasis added).

21. "The FCC is statutorily authorized to exempt from [the TCPA's prior-consent] requirement, 'calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the [FCC] may prescribe as necessary in the interest of the privacy rights this section is intended to protect.'" *ACA International v. Fed Comm'cns Comm'n*, 885 F.3d 687, 710 (citing 47 U.S.C. § 227(b)(2)(C)).

22. The FCC has formulated a separate, regulatory exemption to the prior consent requirement applicable to calls made for "exigent healthcare treatment purposes" (hereinafter the "Healthcare Treatment Purposes Exemption"). *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of* 1991, 30 F.C.C. Rcd. 7961, ¶¶ 143 - 148 (2015) (hereinafter the "2015 Declaratory Ruling and Order").

23. In the 2015 Declaratory Ruling and Order, the FCC identifies seven (7) conditions that are necessary for voice calls and/or text messages to qualify for the Healthcare Treatment Purposes Exemption:

   i. Voice calls and text messages must be sent, if at all, only to the wireless telephone number provided by the patient;

   ii. Voice calls and text messages must state the name and contact information of the healthcare provider (for voice calls, these disclosures would need to be made at the beginning of the call);

   iii. Voice calls and text messages are strictly limited to the purposes permitted in para. 146 above; must not include any telemarketing, solicitation, or advertising; may not include accounting, billing, debt-collection, or other financial content; and must comply with HIPAA privacy rules;

   iv. Voice calls and text messages must be concise, generally one minute or less in length for voice calls and 160 characters or less in length for text messages;

   v. A healthcare provider may initiate only one message (whether by voice call or text message) per day, up to a maximum of three voice calls or text messages combined per week from a specific healthcare provider;

   vi. A healthcare provider must offer recipients within each message an easy means to opt-out of future such messages, voice calls that could be answered by a live person must include an automated, interactive voice-and/or key press-activated opt-out mechanism that enables the call recipient to make an opt-out request prior to terminating the call, voice calls that could be answered by an answering machine or voice mail service must include a toll-free number that the consumer can call to opt-out of future healthcare calls, text messages must inform recipients of the ability to opt-out by replying "STOP," which will be the exclusive means by which consumers may opt-out of such messages; and,

   vii. A healthcare provider must honor the opt-out requests immediately.

*See* 30 F.C.C. Rcd. 7961, 8031-8032.

24. The TCPA creates a private right of action for affected consumers, and allows them to recover the greater of their actual monetary loss or up to $500 per call for each violation. *See* 47 U.S.C. § 227(b).

25. The statute also allows the court to increase any award up to treble statutory damages if it finds a defendant's violation was willful or knowing. *See Id*. at 1318.

26. The Ninth Circuit has instructed courts to take a common-sense approach when analyzing liability under the TCPA. *See Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012).

## FACTUAL ALLEGATIONS

27. In 2019, United and its affiliated carriers operated more than 1.7 million flights carrying more than 162 million customers.[1]

28. While operating its business, United actively chose to communicate with its customers through SMS text messages, which are sent to consumers' cellular telephones through the use of an ATDS.

---

[1] https://ir.united.com/company-information/company-overview

29. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to said device.

30. The impersonal, repetitive, and generic nature of United's text messages, combined with the large number of text messages sent by United, demonstrates that United utilizes an ATDS in transmitting its text messages to consumers.

31. The FCC has stated that companies must provide an opt-out mechanism in their text messages. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling as to Petition of Soundbite Communications, Inc*. CG Docket No. 20-278 (November 29, 2012).

32. At all times relevant, United represented that replying to their text message communications with the word "STOP" would prevent consumers from receiving further text messages.

33. Upon information and good belief, no emergency purpose exists that would justify a statutory exemption for United's text messages sent to Plaintiff after Plaintiff requested that the text messages cease. *See St. Clair v. CVS Pharm., Inc.*, 222 F. Sup. 3d 779 (N.D. CA 2016) (holding that when a customer (or former customer) has explicitly told a company that he/she does not want or need calls, the continued calls can hardly be described as "necessary," much less involving a

"situation" affecting the customer's health and safety.); *see also Dorfman v. Albertsons, LLC*, 2018 WL 9988655 (D. Idaho, Oct. 18, 2018) ("Thus, even in cases where the statutory exception may apply to the calls at the outset, it no longer applies once the recipient of the calls notifies the caller to stop.").

*34.* Further, United is not sheltered from liability under the Healthcare Treatment Purposes Exemption because United has not complied with the exemption's enumerated requirements. *See Coleman v. Rite Aid of Ga., Inc.*, 284 F. Supp. 3d 1343 (N.D. Ga. January, 10, 2018) (stating that a defendant could not utilize the Healthcare Treatment Purposes Exemption as a defense because it failed to satisfy the prerequisites to the exception's operation.)

35. Upon information and good belief, United has a pattern and practice consisting of sending consumers across the United States text messages after they opt-out of United's text message campaigns.[2]

36. At all times relevant herein, Plaintiff is the subscriber and sole user of the Verizon wireless plan for the cellular telephone number \*\*\*-\*\*\*-7905.

37. Beginning on or about October 15, 2020, Plaintiff received an automated text message from short code 26266 stating: "You'll now receive SMS

---

[2] https://www.flyertalk.com/forum/united-airlines-mileageplus/2028902-how-do-you-stop-sms-messages-ua.html

flight updates from United when traveling. Reply HELP for help, STOP to opt out. Standard message and data rates may apply. United.com/texts".

38. Upon information and good belief, the short code 26266 is owned and operated either by United or its agents acting on behalf of United.

39. Immediately upon receiving the aforementioned text message from United, Plaintiff texted the word "STOP" to short code 26266.

40. Plaintiff then received a confirmatory text from United stating: "You'll no longer receive SMS flight updates from United. Standard message and data rates may apply. United.com/texts"

41. Despite the requested opt-out by Plaintiff and receipt of a confirmatory text from United, Plaintiff continued to receive text messages from United.

42. Frustrated by the situation, Plaintiff continued to send text messages to United at short code 26266 requesting that the text messages cease.

43. Specifically, Plaintiff requested that United stop texting him on October 22, 2020; October 26, 2020; and October 27, 2020; however, United continued to send Plaintiff text messages.

44. United never honored any of Plaintiff's opt-out requests, nor did Plaintiff request that the text message campaign be reinstated in any way.

45. United's automated text messages sent to Plaintiff after he requested them to stop caused Plaintiff actual and tangible harm, including without limitation, an invasion of his privacy, the tying up of his cellular telephone line, depletion of his cellular telephone's battery life, aggravation at receiving further text messages after requesting that they stop, annoyance, intrusion on his seclusion, trespass, and conversion.

46. Further, Plaintiff suffered loss of time as a result of reviewing the text messages and responding back to the text messages in attempts to have the text messages stop.

47. United's text messages also inconvenienced Plaintiff and caused disruption to his daily personal and/or work life.

48. For example, Plaintiff received some of United's text messages while engaged in important activities, including without limitation, filming content for his business and editing the film content.

49. Plaintiff was disrupted by the text messages sent by United and had to stop what he was doing, and take time to view and respond to them.

50. United's violations of the TCPA were knowing and willful, as United was aware of the issues concerning the text messages, which resulted in numerous automated text messages being sent to Plaintiff and the putative class after requests for them to cease, but failed to take any corrective action.

51. Moreover, United is fully aware of the TCPA and its requirements because United was previously issued a citation by the FCC for violations of the statute. (*See* FCC Citation No.: EB-08-TC-6836; December 9, 2008).

## CLASS ALLEGATIONS

52. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

53. Plaintiff proposes to represent a class and sub-class of persons affected by United's actions, described as follows:

> (i) All persons within the United States (ii) to whom United, directly or through a third-party, (iii) sent a text message to their cellular telephone (iv) using any automatic telephone dialing system or an artificial or prerecorded voice, (v) after said individual opted-out of receiving further text messages, (vi) within the four years preceding the filing of this Complaint, through the date of class certification.

54. Excluded from the class is United, any entities in which United has a controlling interest, United's agents and employees, any Judge to whom this action is assigned, any member of the Judge's staff and immediate family, and Plaintiff's attorneys and any member of their staff and immediate family.

55. The proposed class members are identifiable through United's records and databases, third-party telephone records, and third-party telephone number databases.

56. The potential class members number in the thousands, at least. Therefore, individual joinder of these persons is impracticable.

57. Plaintiff is a member of the class and/or any subclass.

58. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to, the following:

    a. Whether United used any automatic telephone dialing system or an artificial or prerecorded voice to make the subject text messages;

    b. Whether United placed non-emergency calls without obtaining the recipients' valid prior express consent or, where applicable, prior express written consent;

    c. Whether United failed to honor individuals opt-out requests;

    d. Whether United's violations of the TCPA were willful or knowing; and

    e. Whether the Plaintiff and the class members are entitled to statutory damages as a result of United's actions.

59. Plaintiff's claims are based on the same facts and legal theories, and therefore are typical of the claims of class members.

60. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the classes, he will fairly and adequately protect

the interests of the classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

61. The actions by United complained of herein are generally applicable to the class as a whole and to Plaintiff.

62. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by United and/or its agents.

63. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

64. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## COUNT I
### (Violations of 47 U.S.C. § 227 *et seq.*)

65. Plaintiff incorporates the foregoing paragraphs as if set forth herein.

66. It is a violation of the 47 U.S.C. § 227(b)(1)(A)(iii) to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an

artificial or prerecorded voice…to any telephone number assigned to a cellular telephone service…" 47 U.S.C. § 227(b)(1)(A)(iii).

67. At all times relevant, United sent text messages to Plaintiff's and members of the putative class' cellular telephones.

68. At all times relevant, United utilized an ATDS when sending the aforementioned text messages to Plaintiff's and members of the putative class' cellular telephones.

69. At all times relevant, United received opt-out requests from Plaintiff and other members of the putative class, but failed to honor said requests in violation of the TCPA.

70. At all times relevant, no emergency purpose exists that would justify a statutory exemption for United's text messages sent to consumers after the consumer requests that the text messages cease.

71. After Plaintiff opted-out of receiving text messages from United, any statutory "emergency purpose" exemption that may have existed was no longer applicable. *See St. Clair*, 222 F. Sup. 3d 779, 780 (N.D. CA 2016).

72. At all times relevant, United's text messages failed to comply with the requirements of the Healthcare Treatment Purposes Exemption.

73. Accordingly, United cannot seek shelter under the Healthcare Treatment Purposes Exemption. *See Coleman*, 284 F. Supp. 3d 1333, 1344 (N.D. Ga. January, 10, 2018)

74. United's violations of the TCPA resulted in, among other things, an invasion of Plaintiff's privacy, loss of time addressing the unwanted text messages, and infringement on the right to enjoy the full utility of his cellular device.

75. At all times relevant, United is and was directly and/or vicariously liable for the violations of the TCPA described above.

76. As such, United's text messages were willful or, at a minimum, negligent. *See* 47 U.S.C. § 227(b)(3).

77. Should the Court determine that United's misconduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the proposed class.

WHEREFORE, Plaintiff, Riordan Pringle, respectfully requests the following relief:

    a. A declaration that United's practices described herein violate 47 U.S.C. § 227(b)(1)(A)(iii);

    b. An award of statutory damages, including treble damages, in the maximum amount allowed by law;

   c. An award of costs associated with this litigation;

   d. An injunction requiring United to cease all text communications in violation of the TCPA as described herein; and

   e. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

/s/ *Andrew Guzzo*
Andrew J. Guzzo, Esq.
HI Bar No.: 010586
KELLY GUZZO, PLC
7 Waterfront Plaza
500 Ala Moana Blvd., Ste. 7400
Honolulu, Hawaii 96813
Aguzzo@kellyguzzo.com
Office: 703-424-7576

Scott D. Owens, Esq.
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Office: 954-589-0588
Scott@scottdowens.com
(\**Pending Pro Hac Vice Forthcoming*)

Christopher W. Legg, Esq.
CHRISTOPHER W. LEGG, P.A.
8965 Sandy Crest Lane

        Boynton Beach, Florida 33473
        Chris@TheConsumerLawyers.com
        Office: 954-962-2333
        (*Pending Pro Hac Vice Forthcoming*)

        *Counsels for Plaintiff*
        *and the putative class*